UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BERNICE BARCLAY, §<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>STATE FARM LLOYDS, §<br>MADELINE NGUYEN, §<br>*and* ANGELA WILSON, §<br>§<br>*Defendants.* § | CIVIL ACTION H-14-3649 |

### MEMORANDUM OPINION & ORDER

Pending before the court is (1) defendants State Farm Lloyds ("State Farm"), State Farm agent Madeline Nguyen, and State Farm adjuster Angela Wilson's (collectively, "Defendants") motion for summary judgment (Dkt. 28) and (2) State Farm's motion to exclude the testimony and opinions of Gerard J. Duhon (Dkt. 27). After reviewing the motions, the pleadings, the responses, all other relevant documents in the record, and the applicable law, the court is of the opinion that State Farm's motion to exclude should be DENIED and Defendants' motion for summary judgment should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This is a lawsuit arising out of an insurance claim for foundation damage. According to the original petition filed in state court, Bernice Barclay owned an insurance policy from State Farm that insured Barclay's property. Dkt. 1-2 at 6. According to Barclay, on or around December 27, 2012, Barclay returned home to discover that her washing machine had malfunctioned, causing water to leak into the areas adjacent to the laundry room, including the garage. Shortly thereafter, Barclay discovered foundation damage. An appraisal of the property revealed estimated damages totaling

$28,514.05. Dkt. 31, Ex. 6. Barclay subsequently filed an insurance claim with State Farm. Dkt. 28 at 3.

On or around February 18, 2013, defendant State Farm denied Barclay's claim. Dkt. 31, Ex. 7 at 6. The denial letter states that State Farm's investigation revealed that the damage was not caused by the plumbing leak(s), and included in the letter were excerpts from the applicable policy provisions supporting its denial of the claim. *Id*. at 7. In April of 2013, Barclay's proposed expert, Gerard J. Duhon, conducted an inspection of the property and completed a report on the results. Dkt. 30, Ex. 1. In the report, Mr. Duhon opined that the overflowed water from the washing machine seeped through a crack in the garage floor into the soil under the foundation causing foundation movement and damage. Dkt. 30, Ex. 1.

On October 8, 2014, Barclay filed this lawsuit against Defendants in state court, and on December 20, 2014, State Farm removed the lawsuit to federal court. Dkt. 1. Subsequently, Barclay moved to remand the case to state court arguing that this court lacks diversity jurisdiction over the case. Dkt. 5. The court denied Barclay's motion to remand, holding that the two in-state defendants (Angela Wilson and Madeline Nguyen) were improperly joined to defeat jurisdiction. Dkt. 13. On September 11, 2015, defendant State Farm filed a motion to exclude the testimony and opinions of Gerard J. Duhon (Dkt. 27) and Defendants filed a motion for summary judgment (Dkt. 28).

## II. LEGAL STANDARD & ANALYSIS

### A. Defendant's Motion to Exclude the Testimony and Opinions of Gerard J. Duhon

State Farm seeks to exclude the testimony and opinions of Barclay's designated expert, Gerard J. Duhon. Dkt. 27. The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements

2

of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In evaluating an expert's testimony under Rule 702, the court takes on a "gatekeeping role" and makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597, 113 S. Ct. 2786 (1993). To admit an expert's testimony, the court must determine that it is both relevant and reliable. *Id.* at 589.

In this case, State Farm challenges the reliability of Mr. Duhon's expert opinion. In making the reliability determination, the Supreme Court has indicated that the trial court may consider whether the expert's theory or technique (1) can or has been tested, (2) is subject to peer review and publication, (3) has a high known or potential error rate or standards controlling its operation, and (4) is generally accepted in the relevant scientific community. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167 (1999) (citing *Daubert*, 509 U.S. at 592-94). Importantly, these factors are not a definitive checklist and may not be relevant to assessing the expert's reliability in every case. *Id.* at 150. The Court makes clear that these reliability factors should be applied to the expert's theory or technique. *See id*. at 141.

3

State Farm does not appear to object to Mr. Duhon's credentials.[1] Rather, it asserts that "the testimony and opinions provided by Mr. Duhon are neither reliable nor based upon generally accepted geotechnical engineering principles and will not assist the jury to understand the evidence or to determine a fact issue." Dkt. 27 at 2. To support its argument, State Farm primarily relies on the following three challenges to Mr. Duhon's expert report:

- "[T]he opinion that a residential slab on a grade foundation would move in a downward direction as a result of a water source is incorrect and is not consistent with generally accepted geotechnical engineering principles, the physical characteristics of expansive clay soils, and the overall performance of residential slab on grade foundations supported on expansive clay soils." Dkt. 27 at 5. State Farm claims that if water had reached the clay soil beneath the concrete slab foundation, the soil may have swelled causing the foundation to move upward, but could not cause it to move downward. *Id*. at 5. According to State Farm, in order for the foundation to move downward, the subgrade clay soil would have to have been displaced from under the foundation slab and permeter grade beams. *Id*.

- Mr. Duhon's alleged failure to address how the water reached the subgrade clay soil by penetrating the Visqueen Vapor barrier under the foundation and the layer of sand backfill directly under the Vapor barrier. Dkt. 27 at 6.

---

[1] Mr. Duhon is a licensed professional engineer with a primary focus on the identification and solution of building problems. Dkt. 30, Ex. 1. Mr. Duhon has practiced in the field of foundation measurement, observation, analysis, conclusions, recommendations, and repair for 18 years. Dkt. 30, Exs. 1, 2. Further, Mr. Duhon has performed almost 10,000 foundation inspections in his career and performs about 1000 building inspections per year—the majority of which involve foundations. Dkt. 30, Ex. 1 at 2.

- Mr. Duhon's alleged failure to address what State Farm deems are "generally accepted causes of foundation movement, such as environmental factors including intermittent periods of rainfall and drought, variation in watering of surrounding vegetation, drainage issues, the absence or presence of guttering systems, and the location and size of trees and shrubs that consume groundwater." *Id*. at 6.

State Farm's first challenge—that water leakage cannot cause downward foundation movement—is a technical attack on Mr. Duhon's ultimate opinion. Here, State Farm attempts to discredit Mr. Duhon's opinion based on the opinions of its own experts, who claim that water leakage cannot, by itself, cause downward foundation movement. These alleged differences in opinions among the experts are fact issues for the jury to determine at trial.

State Farm's second challenge also attempts to discredit Mr. Duhon's opinion by pointing to Defendants' expert's opinion that the Visqueen Vapor barrier would have stopped the water from flowing to the underlying soil. In his deposition, Mr. Duhon explained that the vapor barrier stops only the upward flow of water, not the downward flow of water, which is exactly what he alleges occurred in this case. Dkt. 31, Ex. 3 at 13. Determining which expert is correct on this matter is a fact issue for the jury to decide.

State Farm's remaining challenge relates to Mr. Duhon's alleged failure to consider alternative causes of foundation damage. Mr. Duhon's engineering report includes his evaluation of the Project, Time, and Cost Report ("PT&C Report") relied upon by Defendants. Dkt. 31, Ex. 1 at 5. The PT&C Report concluded, *inter alia*, that "the reported leaks did not contribute to the observed evidence of differential foundation movement." Dkt. 28, Ex. 6 at 1-2. Mr. Duhon concluded that the PT&C Report "provide[s] most of the know[n] reasons why foundations move,

and leaves it to the reader to presume that one of these was at work." *Id*. Although Mr. Duhon's report does not address every potential environmental factor listed by State Farm, it does address some environmental factors. A State Farm expert opined that the "alleged damages to the Barclay residence are the result of long-term differential foundation movement /settlement due to the environmental factors (drought and trees) which affect the expansive clay soils supporting the structure." Dkt. 28, Ex. 8 at 3.

Mr. Duhon's report directly addresses the potential impact of trees and states four reasons why the tree located near the garage, since removed, was not likely to be the cause of the foundation problems. Dkt. 31, Ex. 1 at 6. Accordingly, after reviewing Mr. Duhon's eight (8) page report, the court finds that, for purposes of ruling on State Farm's *Daubert* motion, Mr. Duhon has adequately considered other alternative explanations in reaching his opinion. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) (reversing district court's exclusion of an expert witness, in part because of the expert's failure to eliminate "many viable alternative sources," ruling that the "standard of reliability" applied by the district court was overly stringent) (citations omitted). In *Pipitone*, the Fifth Circuit noted:

> [T]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system. Rather, as *Daubert* makes clear, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.

*Id*. at 250.

State Farm's challenges are primarily attacks on Mr. Duhon's ultimate opinion based on its own experts' differing opinion. These challenges do not warrant exclusion because they go to the weight and credibility of the expert's testimony, not to the admissibility. *See* Fed. R. Evid. 702,

6

Advisory Comm. Note ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."). Accordingly, State Farm's motion to exclude is DENIED.

### B. Defendants' Motion for Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

Defendants raise two arguments for why they are entitled to summary judgment. First, they assert that because there is no evidence that the alleged damages and losses are covered under the insurance policy, Barclay's contract claims and extra-contractual claims fail as a matter of law. Dkt. 28 at 3. This argument fails because the court has denied State Farm's motion to exclude the testimony and opinions of Barclay's expert. State Farm admits that the policy includes a Dwelling Foundation Endorsement, which covers "loss caused by and consisting of settling, cracking,

shrinking, bulging, or expansion of the foundation . . . caused by seepage or leakage of water or steam from within a plumbing . . . system." Dkt. 28 at 9 (quoting the insurance policy, Dkt. 28, Ex. 1 at 13). Mr. Duhon has opined that "[t]he most likely cause of failure of the foundation at the garage was the overflow of water from the washer drainage in the laundry room." Dkt. 31, Ex. 1 at 6. Defendants do not appear to dispute the contention that, assuming Mr. Duhon's theory is correct, this would constitute a covered loss under the policy. Therefore, Mr. Duhon's expert opinion creates a fact issue as to whether the alleged damages are covered under the insurance policy.

Defendants also seek summary judgment with respect to the claims asserted against defendants Angela Wilson and Madeline Nguyen. Dkt. 28. at 11. Nguyen is the State Farm agent that sold the relevant insurance policies to Barclay. Wilson is the claims adjuster that was allegedly involved in adjusting a claim that Barclay filed. Barclay claims that these two defendants did not properly do their jobs; made misrepresentations—often conflicting—about who was covered or what was covered; and did not handle the claims process according to Texas Insurance Code requirements. Dkt. 1, Ex. 2. In her original petition, Barclay asserts multiple causes of action against Wilson and Nguyen under theories of negligent misrepresentation, fraud, conspiracy to commit fraud, and non-compliance with the Texas Deceptive Trade Practices Act. *Id*.

On March 26, 2015, this court denied Barclay's motion to remand, holding that the two in-state defendants (Wilson and Nguyen) were improperly joined to defeat jurisdiction. Dkt. 13. In reaching this decision, the court conducted a Rule 12(b)(6)-type inquiry and ultimately determined that Barclay failed to assert a reasonable basis on which to recover for any of the claims asserted against Nguyen and Wilson. *Id*. at 3. In her response to the motion for summary judgment, Barclay appears to have abandoned all claims except for the negligent misrepresentation claims. Dkt. 31 at

8

7. Barclay then makes a series of conclusory allegations—without presenting any new evidence or arguments—with respect to each element of a negligent misrepresentation claim against Wilson and Nguyen. *See* Dkt. 31 at 7-8.

Barclay alleges that "Defendant Wilson, a claim representative, assured Plaintiff that she was covered for the foundation damage that occurred" and that "Plaintiff would not have purchased the policy had she known that she would not be covered for foundation damage." *Id*. Even assuming these conclusory allegations are true, Wilson's alleged assurances of coverage were made after Barclay had already purchased the policy. Therefore, Wilson's representations could not have induced her to purchase the policy.

With respect to the negligent misrepresentation claim against Nguyen, Barclay states that Nguyen "assured Plaintiff that she would be covered for the type of foundation damage that occurred" and that "Plaintiff relied on Nguyen's misrepresentations, as well, in deciding to purchase the insurance policy." *Id*. at 7. To support this claim, Barclay merely cites to her own affidavit (Dkt. 31, Ex. 2), which fails to even identify Nguyen by name or state when, where, and by whom the representation was made. Moreover, the affidavit states that the alleged misrepresentation was that "[Barclay] was insured for the peril of foundation damage caused by seepage or leakage of water or stream within a plumbing system." *Id*. at 1. However, even assuming that Nguyen made this representation and that it induced Barclay to purchase the policy, this is not a false representation. This statement appears to be consistent with the language in the insurance policy. This dispute is over whether seepage of water from within a plumbing system was in fact the cause of the foundation damage. Accordingly, Barclay cannot prevail on any of her claims against Nguyen and Wilson.

9

### III. CONCLUSION

Accordingly, State Farm's motion to strike (Dkt. 27) is DENIED and Defendants' motion for summary judgment (Dkt. 28) is GRANTED IN PART and DENIED IN PART.  Defendants' motion for summary judgment is DENIED to the extent that there are fact issues as to each of Barclay's claims against defendant State Farm.  Defendants' motion for summary judgment is GRANTED as to all claims and causes of action asserted against defendants Madeline Nguyen and Angela Wilson.

It is so ORDERED.

Signed at Houston, Texas on January 14, 2015.

_____
Gray H. Miller
United States District Judge